**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40920
_____


RAUL RODRIGUEZ,

                            Petitioner-Appellant,

     versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,

                            Respondent-Appellee.


_____

Appeal from the United States District Court for the
Southern District of Texas
_____

January 15, 1997

Before GARWOOD, BARKSDALE and DENNIS, Circuit Judges.

GARWOOD, Circuit Judge:

Raul Rodriguez (Rodriguez), currently confined in the Texas Department of Criminal Justice, McConnell Unit, filed this his third federal *habeas corpus* petition in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 2254. The district court dismissed his petition as an abuse of the writ. Rodriguez appeals. We affirm.

### Facts and Proceedings Below

On the evening of February 24, 1981, Rodriguez and a female companion entered the Royal Drive Inn, a bar in Corpus Christi, Texas. Rodriguez and his companion sat down at a table. After a

short while, Rodriguez got up and walked towards the bar's restroom. For reasons not fully explained at trial, Rodriguez approached the victim, Irma Cruz (Cruz), who was playing pool at a table near the restroom. According to testimony at his trial, Rodriguez, in Spanish, called her a bitch and slapped her, causing her to fall to the floor. Cruz produced a knife and stabbed Rodriguez either in his back or on his side. Immediately afterward, Rodriguez shot Cruz in the left side of her neck. Rodriguez then left the bar with his companion. Cruz died of her wound.

Rodriguez was tried for murder on March 9, 1982, in state district court in the 148th Judicial District in Nueces County, Texas. The jury returned a verdict of guilty on the lesser-included offense of voluntary manslaughter on March 12, 1982. Punishment, also determined by the jury, was assessed at 85 years' imprisonment and a $10,000 fine. *State v. Rodriguez*, No. 82-CR-121-E.

The Texas Court of Appeals, Thirteenth Supreme Judicial District of Texas (Corpus Christi), affirmed his conviction on November 23, 1983. *Rodriguez v. State*, No. 13-82-114-CR. The Texas Court of Criminal Appeals refused his petition for discretionary review on May 9, 1984. *Rodriguez v. State*, P.D.R. No. 106-84.

Rodriguez filed four separate state applications for writs of *habeas corpus* on July 3, 1984, February 21, 1989, April 19, 1994, and April 17, 1995. *Ex Parte Rodriguez*, No. 14,299; No. 14,299-02; No. 14,299-03; No. 14,299-04. The applications were denied by the

2

Texas Court of Criminal Appeals without written order on November 21, 1984, June 21, 1989, July 20, 1994, and June 28, 1995, respectively.

Rodriguez also filed two prior federal petitions for writs of *habeas corpus*. His first federal petition, filed in 1985, was denied on the merits in 1986. *Rodriguez v. Procunier*, No. C-85-56 (S.D. Tex. Feb. 13, 1986). This Court denied a certificate of probable cause to appeal that denial. *Rodriguez v. McCotter*, No. 86-2118 (5th Cir. Oct. 1, 1986).

Rodriguez's second federal petition for a writ of *habeas corpus,* filed in 1990, was denied as an abuse of the writ. *Rodriguez v. Collins*, No. C-90-315 (S.D. Tex. Dec. 16, 1991). This Court again denied a certificate of probable cause to appeal. *Rodriguez v. Collins*, No. 92-7072 (5th Cir. Aug. 10, 1992), *reh'g denied*, No. 92-7072 (5th Cir. Oct. 9, 1992).

Rodriguez filed this action, his third federal petition for a writ of *habeas corpus*, on October 4, 1994. Proceeding *pro se and in forma pauperis*, Rodriguez asserted claims of ineffective assistance of trial and appellate counsel. Respondent moved to dismiss Rodriguez's petition for abuse of the writ under Rule 9(b) of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. Rodriguez filed a motion to amend his section 2254 petition and a motion in opposition to the state's motion to dismiss. In his motions, Rodriguez sought to abandon certain of his ineffective assistance of counsel claims and to add claims concerning the trial court's instruction on the intent element of his offense, ineffective assistance of appellate counsel, and ineffective

3

assistance of trial counsel for failing to request a special self-defense instruction after the jury began its deliberations. The district court granted the state's motion to dismiss Rodriguez's petition as an abuse of the writ. Rodriguez filed a motion for reconsideration which the district court denied. Rodriguez filed a timely notice of appeal. The district court granted a certificate of probable cause in November 1995. We now affirm.

## Discussion

"A district court's decision to dismiss a second or subsequent federal habeas petition for abuse of the writ lies within its sound discretion. We will reverse such a dismissal only if we find an abuse of that discretion." *McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994) (citing *Sanders v. United States*, 83 S.Ct. 1068, 1078-79 (1963)). A district court abuses its discretion when it dismisses a petition on an erroneous legal conclusion or clearly erroneous finding of fact. *Id.*

Rule 9(b) provides that a judge may dismiss a second or successive *habeas* petition "if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, *if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ*." Rule 9(b), Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 (emphasis added). In *McCleskey v. Zant*, the Supreme Court determined that raising a new or different claim in a subsequent *habeas* petition constitutes an abuse of the writ unless the petitioner can demonstrate both "cause" for his failure

4

to assert the claim in an earlier petition and "prejudice" if the court fails to consider the new claim.  111 S.Ct. 1454, 1470 (1991); *Saahir v. Collins*, 956 F.2d 115 (5th Cir. 1992); *Woods v. Whitley*, 933 F.2d 321, 323 (5th Cir. 1991).  The cause standard requires a *habeas* petitioner to show that "'some objective factor external to the defense'" prevented the petitioner from raising the claim.  *McCleskey*, 111 S.Ct. at 1470 (quoting *Murray v. Carrier*, 106 S.Ct. 2639, 2645 (1986)).  Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim.  *Id.* at 1472.  If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice.  *Saahir*, 956 F.2d at 118.

The government bears the burden of pleading abuse of the writ.[1]  *McCleskey*, 111 S.Ct. at 1470; *Woods*, 933 F.2d at 323.  The government satisfies this burden "if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ."  *McCleskey*, 111 S.Ct. at 1470.  The burden to disprove abuse then shifts to the petitioner.  *Id.*

Finally, even if the petitioner cannot demonstrate cause, he may ultimately prevail if he can demonstrate that a "fundamental miscarriage of justice" would result from failure to entertain the

---

[1]     A district court judge may, of course, raise the issue *sua sponte*.  *See Williams v. Whitley*, 994 F.2d 226, 231 (5th Cir.), *cert. denied*, 114 S.Ct. 608 (1993); *Woods*, 933 F.2d at 323 n.3; *Schouest v. Smith*, 914 F.2d 713, 715 (5th Cir. 1990), *modified*, *Schouest v. Whitley*, 927 F.2d 205 (5th Cir. 1991).

new or successive *habeas* claim. *Id.* This class of cases is exceedingly narrow, resulting from "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *Id.* "[T]he term 'actual innocence' means *factual*, as opposed to *legal*, innocence——'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey*, means that the person did not commit the crime." *Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992)(emphasis in original), *cert. denied*, 113 S.Ct. 1652 (1993).

From the outset, we note that the government met its burden of pleading abuse of the writ in its motion to dismiss filed with the district court.[2] Accordingly, Rodriguez bore the burden of establishing cause and prejudice for his failure to raise his

---

[2] In *Urdy v. McCotter*, 773 F.2d 652, 656 (5th Cir. 1985), this Court held that "the petitioner must be given specific notice that the court is considering dismissal and given at least 10 days in which to explain the failure to raise the new grounds in a prior petition." Notice serves to inform the petitioner (1) that dismissal is being considered; (2) that dismissal will be automatic should he fail to respond; and (3) that his response should present facts rather than mere opinion or conclusion. *Johnson v. McCotter*, 803 F.2d 830, 832 (5th Cir. 1986).

Although it appears the district court failed to comply with Rule 9(b)'s notice requirement, Rodriguez does not raise this issue on appeal. We will ordinarily not address issues not raised and briefed by appellants. *See R.A.M. Al-Ra'id v. Ingle*, 69 F.3d 28, 31 (5th Cir. 1995). In any event, this Court has frequently held that failure to comply with Rule 9(b)'s notice requirements is subject to harmless error analysis. *Williams v. Whitley*, 994 F.2d 226, 230 n.2 (5th Cir.), *cert. denied*, 510 U.S. 1014 (1993); *Byrne v. Butler*, 847 F.2d 1135, 1138-40 (5th Cir. 1988); *Johnson*, 803 F.2d 830. Rodriguez filed a timely motion in opposition to the state's Rule 9(b) motion to dismiss, and there is nothing to indicate that he did not in his opposition raise all available reasons why there should not be a dismissal under Rule 9(b). Even if the issue of lack of formal Rule 9(b) notice had been raised on appeal, we would conclude that such omission was harmless error.

6

claims in one of his prior federal *habeas* petitions.

Rodriguez's only assertion of cause concerns his first issue on appeal, a contention that the trial court used an unconstitutional, "equivocal" instruction on the element of intent. Rodriguez argues that the legal basis for this claim was unavailable prior to the Texas Court of Criminal Appeals decision in *Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994), constituting "cause" for his failure to assert the claim in a prior petition.

Rodriguez acknowledges that he did not raise this claim in his petition filed with the district court. He did, however, seek to amend his petition to add this claim of erroneous jury instruction in his motion to amend filed in response to the state's motion to dismiss for abuse of the writ. The district court's order granting the state's motion to dismiss did not address Rodriguez's amended claims specifically. Rodriguez's motion for reconsideration was also denied without addressing his *Cook* claim. For the reasons set forth below, we find that neither the date of the Texas Court of Criminal Appeals' decision in *Cook* nor, for that matter, the status of Texas law at the time of his earlier petitions provide the requisite "cause" to excuse his failure to assert a cognizable *federal* claim in his prior federal *habeas* actions.

In *Cook*, the appellant was charged with intentional murder pursuant to Texas Penal Code § 19.02(a)(1) and was convicted by a jury of the lesser-included offense of voluntary manslaughter. 884 S.W.2d at 485. At trial, defense counsel objected to the jury charge on the grounds that the "charge [did] not limit the

7

definition of both culpable mental states to the result of the offense only." *Id.* at 486. The trial court overruled the objection, charging the jury with the definitions of "intentionally" and "knowingly" set forth in Texas Penal Code § 6.03. *Id.* The Court of Criminal Appeals reversed, holding that, because "[i]ntentional murder under § 19.02(a)(1) is a 'result of conduct' offense, . . . the trial judge erred in not limiting the culpable mental states to the result of appellant's conduct." *Id.* at 491. Accordingly, the case was remanded to determine the actual harm, if any, suffered by the appellant. Id. at 492.

As in *Cook*, Rodriguez was indicted for intentional murder and was convicted on the lesser-included offense of voluntary manslaughter. The jury was also given a charge on the definitions of "intentionally" and "knowingly" that tracked the language of Texas Penal Code § 6.03.[3]

---

[3]     Paragraph three of the jury charge provided:

> "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

Paragraph four of the jury charge provided:

> "Now, if you find from the evidence beyond a reasonable doubt that on or about the 24th day of February, 1981, in Nueces County, Texas, the Defendant, Raul Rodriguez, did *intentionally or knowingly cause the death* of an individual, *Irma Cruz, by shooting her* with a firearm, as set forth in the indictment, then you will

8

The state concedes that the definitional portion of the jury charge (paragraph three of the charge) used in Rodriguez's trial would probably constitute error under Texas law.[4] Rodriguez did not object to this aspect of the charge. Both Rodriguez and the state agree, however, that at the time of trial the law regarding the validity of the definitional instructions was unsettled.[5] Accordingly, Rodriguez had the obligation to object, as did the defendant in *Cook*, to the instructions in order to preserve his claim.[6] A *federal* court, addressing whether a successive *federal habeas* petition is an abuse of the writ, must determine what *federal* constitutional claims were reasonably available to the petitioner at the time of his prior federal *habeas* petitions. It is only when such a claim "was so novel that it lacked a reasonable basis in existing law" that the failure to assert the claim in an

find the Defendant guilty of Murder.
    Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt as to whether Defendant is guilty of Murder, then you will acquit him of Murder and next consider whether he is guilty of the lesser included offense of Voluntary Manslaughter." (Emphasis added).

[4] The state correctly points out that even under Texas law, the "erroneous" jury instruction would be subject to harmess error analysis. *See Cook*, 884 S.W.2d at 491-92.

[5] Thus, appellant's reply brief states: "[B]efore the *Cook* case, case law was not well settled."

[6] The state opposed Rodriguez's most recent state *habeas* claim, his fourth, on precisely the ground that he failed to object to this aspect of the charge. Presumably this was the ground on which the Court of Crminal Appeals denied his claim. *See Ex Parte Rodriguez* (Memorandum and Order), No. 82-CR-0121E(4) (District Court, 148th Judicial District, Nueces County, Texas May 9, 1995) (stating, in recommending to the Court of Criminal Appeals that habeas relief be denied, that "the assertions contained in the State's answer are correct"). *See, e.g., Lott v. Hargett*, 80 F.3d 161, 164 (5th Cir. 1996).

earlier petition is excused for cause.  *James v. Cain*, 50 F.3d 1327, 1331 (5th Cir.), *cert. denied*, 116 S.Ct. 310 (1995).  Even had Rodriguez not conceded the unsettled nature of the law regarding the instructions at issue, he could not have established the requisite novelty.  The *Cook* opinion itself cited several Texas cases——decided prior to Rodriguez's earlier petitions——that addressed result-oriented offenses, *see Lugo-Lugo v. State*, 650 S.W.2d 72, 86-87 (Tex. Crim. App. 1983), and the issue presented in *Cook, see Kelly v. State*, 748 S.W.2d 236 (Tex. Crim. App. 1988); *Alvarado v. State*, 704 S.W.2d 36 (Tex. Crim. App. 1985); *Beggs v. State*, 597 S.W.2d 375 (Tex. Crim. App. 1980).[7]  There has been no change in federal constitutional law applicable to the jury charge at issue and we are not bound to recognize an error of constitutional dimension simply because Texas has chosen to abandon a particular form of jury charge.  Accordingly, we are unpersuaded that Rodriguez was prevented from asserting his claim in his prior federal *habeas* petitions.

Because Rodriguez cannot establish cause for his failure to assert the claim in his prior federal *habeas* petitions, he must

---

[7]    The issue debated in *Cook* was not whether under Texas law murder or voluntary manslaughter had as a necessary element that the accused have intended to kill the victim, it being clear that such intent had long been a required element.  The issue was rather whether including in the definitional portion of the charge a definition of intent that extended to intent to engage in the underlying conduct (*e.g.* pulling the trigger on a pistol), as well as and *alternatively to* intent to effect the ultimate criminal result (*e.g.* death of the victim), could be reversible error, where the charge was properly objected to on this basis and prejudice could be shown, *notwithstanding* that the application portion of the charge told the jury that in order to convict it must find that the defendant intentionally caused the death of the decedent.

10

proceed, if at all, through the fundamental-miscarriage-of-justice exception. *See Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). Rodriguez maintains his innocence and contends that, as a result of the erroneous jury instruction, failure to address his *Cook* claim would result in a "miscarriage of justice." As noted above, Rodriguez bears a heavy burden under the fundamental-miscarriage-of-justice doctrine. Rather than simply establishing "prejudice,"[8] he must demonstrate that the alleged "constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 111 S.Ct. at 1470.

After a thorough review of the record we are satisfied that it is not probable that the asserted deficiencies in the jury charge resulted in the conviction of an innocent man. Rodriguez has not demonstrated that it is more likely than not that no reasonable juror would have convicted him had the charge not contained the language of which he complains. *See Schulp v. Delo*, 115 S.Ct. 851, 867 (1995). First, there is not even the reasonable likelihood that the jury instructions were applied in a constitutionally impermissible manner, much less resulted in the conviction of an innocent defendant. *See Kinnamon*, 33 F.3d at 465. On two prior occasions we have found the language used in the application

---

[8]     The prejudice analysis for allegedly defective jury instructions examines "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Kinnamon v. Scott*, 33 F.3d 462, 465 (5th Cir.) (quoting *Henderson v. Kibbe*, 97 S.Ct. 1730, 1737 (1977) (citation and internal quotation marks omitted), *cert. denied*, 115 S.Ct. 660 (1994)).

11

paragraph (paragraph four) of Rodriguez's jury instruction[9] eliminates any perceived ambiguity in the definitional paragraph. *See id.* at 465-66; *Buxton v. Collins*, 925 F.2d 816, 824-25 (5th Cir.), *cert. denied*, 111 S.Ct. 1095 (1991). Second, the prosecutor's closing argument makes clear that the intent element of the murder offense referred to the result of the offense (death of the victim) rather than the act of discharging a firearm.[10] Third, the jury was properly instructed not only on the law as it concerns intentional murder and voluntary manslaughter, but was also given instructions on the additional lesser-included offenses of involuntary manslaughter (reckless homicide), criminally negligent homicide, and unlawfully carrying a handgun. The jury was also instructed on self defense.[11] Finally, Rodriguez presents no new facts that demonstrate his innocence—only new legal

---

[9] *See supra* note 2.

[10] Addressing the intent element set forth in the jury instructions, the prosecutor told the jury during his closing argument:

> "It says that our law provides that a person commits the offense of murder if he intentionally or knowingly causes the death of another person, and I submit to you that's what you've got in this case. When he shot that woman in the neck from a distance of six feet, eight feet, or halfway across the bar, he knew what the result was going to be of shooting her. . . . He intentionally caused the result. He intentionally caused another person to die . . . . There's voluntary manslaughter, and that's a lesser offense, and it says basically that it's just like murder except he caused the death under the influence of sudden passion arising from adequate cause."

[11] And, there is nothing to indicate that at trial counsel for either side interpreted the charge as requiring the jury to find anything less than that Rodriguez intended to kill the victim in order to convict him of voluntary manslaughter.

12

"arguments" derived from a case that, arguably for the first time, shed new, clarifying light on yet another possible avenue for him to collaterally challenge his state conviction.[12]

## Conclusion

Rodriguez has failed to demonstrate cause for his failure to raise in his prior, federal *habeas* petitions any of his presently asserted claims and has likewise failed to demonstrate that his present claims reflect the presence of any constitutional error which probably resulted in the conviction of one who is actually innocent. We accordingly affirm the district court's dismissal of this, his third federal *habeas* petition.[13]

AFFIRMED

---

[12] To the extent that Rodriguez asserts a claim of ineffective assistance of trial or appellate counsel based on *Cook*, we note only that such a claim is internally inconsistent with his claim that he had cause for his failure to assert the claim in a prior federal *habeas* petition. As we have determined that the grounds Rodriguez chooses to assert in this petition were reasonably available to him at the time of his two prior federal petitions, we likewise reject his argument that his claims concerning counsel were not reasonably available until the Texas Criminal Court of Appeals delivered its *Cook* decision.

[13] Neither party has raised the possible relevance of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and, as it appears to us that its provisions could not possibly require any result here other than denial of relief to Rodriguez, we give no further consideration to the AEDPA.