# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-41089

_____

ROBERT ANDREW LOOKINGBILL,

Petitioner-Appellant,

VERSUS

JANIE M. COCKRELL,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

June 3, 2002

Before SMITH, BENAVIDES, and
 DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Robert Lookingbill appeals the dismissal, as time-barred under the one-year limitations period established by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d), of his petition for a federal writ of habeas corpus.[1]

---

[1] Section 2244(d)(1) provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court . . . ." Section 2244(d)(2) provides an exception: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claims is pending shall not be counted toward any period of

(continued...)

We affirm.

## I.

Lookingbill was convicted of capital murder and sentenced to death. The Texas Court of Criminal Appeals affirmed his conviction and sentence on April 6, 1994, and denied rehearing on June 8, 1994. The conviction became final on September 8, 1994, on expiration of the ninety-day period during which he could have applied for writ of certiorari. On November 22, 1996, counsel was appointed to represent him during his state habeas proceedings, and he filed an application for a state writ of habeas corpus on April 21, 1997. On March 4, 1998, the Texas Court of Criminal Appeals denied his state habeas petition, and on March 12 he moved for reconsideration of that denial.[2]

Lookingbill filed a motion to proceed *in forma pauperis* ("IFP") and a motion for appointment of federal habeas counsel on May 19, 1998. The trial court set his execution for March 9, 1999. On December 16, 1998, the Texas Court of Criminal Appeals sent a letter to the presiding judge of the district court indicating that the court had denied the motion for reconsideration without written order. The letter was filed in the district court on December 21, 1998.

On February 2, 1999, Lookingbill filed an affidavit in support of his motion to proceed IFP; the following day, the federal district court granted IFP status, appointed federal habeas counsel, and granted a stay of execution.

Lookingbill filed a petition for federal writ of habeas corpus on July 23, 1999. The state moved for summary judgment, averring that the federal petition was time-barred under § 2244(d). Lookingbill asserted that the petition was timely filed and that, even if it was not, equitable tolling excused him. The district court entered summary judgment, then granted Lookingbill a certificate of appealability ("COA") on the limitations and tolling issues.

## II.

Lookingbill argues that the district court erred in holding that his federal habeas petition was not filed within AEDPA's one-year limitations period. We review *de novo* the denial of a federal habeas petition on procedural grounds. *Emerson v. Johnson*, 243 F.3d 931, 932 (5th Cir. 2001); *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000). The AEDPA statute of limitations applies to all habeas petitions filed after the Act's effective date: April 24, 1996. *Kiser v. Johnson*, 163 F.3d 326, 327 (5th Cir. 1999). Lookingbill's murder conviction became final before April 24, 1996. Thus, absent any tolling, he had until April 24, 1997, to file an application for federal habeas relief. *Smith v. Ward*, 209 F.3d 383, 384 (5th Cir. 2000); *Flanagan v. Johnson*, 154 F.3d 196, 200-02 (5th Cir. 1998).

The parties stipulated, however, that the AEDPA limitations period began to run on November 22, 1996, when Lookingbill was appointed state habeas counsel,[3] and that the

---

[1](...continued)
limitation under this subsection." *See Duncan v. Walker*, 533 U.S. 167, 173-76 (2001).

[2] Although Lookingbill claims he filed the motion to reconsider on March 12, 1998, the motion was notarized on March 16, which therefore is the earliest date on which the motion could have been filed.

---

[3] In *Pyles v. Morales*, No. 396-CV-2838-D,
(continued...)

limitations period ran for 150 days from the appointment of state habeas counsel to the filing of the state habeas petition. The limitations period was tolled between April 21, 1997, when Lookingbill filed his state habeas petition, and March 4, 1998, when the Court of Criminal Appeals denied the state habeas petition. Because Lookingbill filed his federal habeas petition on July 23, 1999, it was untimely under § 2244(d) unless the limitations periods was further tolled.

Lookingbill argues that two additional events should have tolled the running of limitations. The first was his filing of a motion to reconsider the denial of his state habeas petition; the second was his motion for appointment of federal habeas counsel.

A.

Lookingbill claims that the motion to reconsider the denial of his state habeas petition was a "properly filed application for state post-conviction or other collateral review" that tolled the limitations period from the date he filed the motion to reconsider the denial of state habeas relief to December 22, 1998. This circuit, like most, holds that "a properly filed application is one submitted according to the state's procedural requirements . . . ." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v. Vaughn*,

[3](...continued)
1996 U.S. Dist. LEXIS 22357, at *3 (N.D. Tex. Dec. 2, 1996), the Texas Attorney General's office agreed that, for "each death-sentenced individual in Texas who has not filed a state habeas petition, the statute of limitations under 28 U.S.C. § 2244(d) is tolled for the period of time [until] the date of the actual appointment of counsel by the Court of Criminal Appeals." Accordingly, Lookingbill's one-year limitations period began to run on November 22, 1996.

134 F.3d 146, 148 (3d Cir. 1998)). We interpret the words "properly filed" narrowly. *Williams v. Cain*, 217 F.3d 303, 307 n.4 (5th Cir. 2000); *Villegas*, 184 F.3d at 470 ("[W]e ought not assume an overly broad meaning of properly filed." (internal quotation marks omitted)). Thus, a properly filed application must meet all procedural requirements. *Galindo v. Johnson*, 19 F. Supp. 2d 697, 701 (W.D. Tex. 1998). If there is an exception to an applicable procedural requirement, and a petition fits within that exception, the petition is properly filed. *Smith*, 209 F.3d at 385.

Rule 79.2(d), TEX. R. APP. P., plainly prohibits the filing of motions for rehearing in habeas cases: "A motion for rehearing an order that denies habeas corpus relief under Code of Criminal Procedure, articles 11.07 and 11.071, may not be filed." *Id*. Nonetheless, "[t]he Court may on its own initiative reconsider the case." *Id*. Relying on that rule, the district court reasoned that this discretion was "insufficient to make Lookingbill's petition properly filed." That judgment was correct under Fifth Circuit precedent when the district court wrote the opinion.

After the district court issued its opinion, however, we decided *Emerson*, which followed the reasoning of *Artuz v. Bennett*, 531 U.S. 4 (2000), and held that, "given *Artuz* and Texas case law allowing habeas petitioners to file suggestions or motions for reconsideration, AEDPA's one-year statute of limitations is tolled during the period in which a Texas habeas petitioner *has filed* such a motion." *Id*. at 935. The court in *Emerson* cited three Court of Criminal Appeals cases in which a Texas court had entertained a motion for recon-

sideration.[4] "The tolling lasts only as long as the Texas courts take to resolve the motion or suggestion for reconsideration." *Id.*

After the parties had filed their briefs in the instant matter, we decided *Melancon v. Kaylo*, 259 F.3d 401 (5th Cir. 2001), holding that the clock should not start running again between the date of the state trial court's disposition of a state habeas petition and the petitioner's timely filing for direct review at the next level. *Id.* at 406. Accordingly, under *Emerson* and *Melancon*, Lookingbill's motion to reconsider tolled the running of limitations from March 4 to December 16, 1998.

In a supplemental letter brief,[5] Lookingbill argues that the district court should have tolled the limitations period until the day after the state district court filed the Court of Criminal Appeals' letter.[6] If we tolled the deadline until December 22, 1998, Lookingbill's COA would be timely.

Section 2244(d)(2) tolls the time limit for state applications that are "pending." 28 U.S.C. § 2244(d)(2). In *Emerson*, 243 F.3d at 935, we considered how long a motion for reconsideration tolls AEDPA's time limit

under § 2244(d)(2). We held that "tolling lasts only as long as the Texas courts take to resolve the motion or suggestion for reconsideration." Our limited holding reflected a serious concern about tolling the deadline for motions for reconsideration filed with the Court of Criminal Appeals; absent a timeline for filing and deciding motions for reconsideration, AEDPA's time limit could toll indefinitely.

The Court of Criminal Appeals "resolve[d]" the motion as soon as it decided it and issued the December 16 letter. Filing the letter ruling with the trial court did nothing to advance or dispose of Lookingbill's case; the motion for reconsideration did not continue to "pend" between the Court of Criminal Appeals' ruling and the filing of the letter. Further tolling would not encourage Lookingbill diligently to exhaust state remedies; after the Court of Criminal Appeals' decision, he had nothing left to do in state court.[7] Requiring the Court of Criminal Appeals to take further steps after its ruling would only frustrate our attempt in *Emerson* to cabin the tolling period.

Lookingbill argues that we should apply Texas's "mailbox rule" to toll limitations for three days past when the letter was mailed. First, even if we tolled the deadline for three

---

[4] *Ex parte Lemke*, 13 S.W.3d 791 (Tex. Crim. App. 2000); *Ex parte Smith*, 977 S.W.2d 610 (Tex. Crim. App. 1998); *Ex parte Graham*, 853 S.W.2d 565 (Tex. Crim. App. 1993).

[5] We asked the parties to submit letter briefs addressing the impact of *Melancon*.

[6] Lookingbill does not argue that he failed to receive actual notice of the Court of Criminal Appeals' decision until after the filing in state district court. The Court of Criminal Appeals' letter ruling listed Lookingbill's counsel as one of the parties to whom a copy was circulated.

[7] Lookingbill's case provides an excellent example. After filing his motion for reconsideration with the Texas Court of Criminal Appeals, he had no other possible state remedy. Rather than waiting for the court to rule on a technically forbidden motion, which the court had no obligation to consider within a particular time frame, Lookingbill filed his federal habeas petition. No one can seriously contend that that the reason for the untimely filing was that he was waiting for the Court of Criminal Appeals to rule on the motion for reconsideration.

days, Lookingbill's COA would be untimely. Second, although we are sensitive to state law when determining whether a motion is still "pending," federal law still determines the time limits under AEDPA.[8]

Federal courts interpret the federal time period as running from the event described rather than from receipt of notice.[9] For example, in *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001), the court reversed a district court for tolling under AEDPA where the petitioner had only one day after the state's actual denial to file a federal petition, reasoning that AEDPA's one-year period suffices, even considering the time it takes for notice to travel through the mails. *Id.*

Lookingbill does not point to any other provision of state law to argue that his habeas petition is pending. This makes good sense. No other provision of Texas law applies; Texas law bars filing the motion we are considering. TEX. R. APP. P. 79.2(d). In *Emerson*, 243 F.3d at 935, we agreed to toll

the AEDPA deadline because the Court of Criminal Appeals had *in fact* considered motions for reconsideration.

Trying, as does the dissent, to graft the generic Texas rules of criminal, civil, and appellate procedure onto a discretionary motion that Texas courts consistently refuse to recognize would be quite challenging.[10] Despite several opportunities for supplemental briefing, Lookingbill did not raise *any* of the state law arguments that the dissent makes for tolling the deadline past December 16.

Where a habeas petitioner fails to brief an argument adequately, we consider it waived.[11] We think it especially unwise to interpret the Texas statutes and rules of procedure iden-

---

[8] *Artuz*, 531 U.S. at 8-9 (giving language of § 2242(d)(2) priority over state law when determining whether motion is "properly filed" in state courts); *Emerson*, 243 F.3d at 934-35 (focusing on whether motion was practically pending rather than permitted by Texas law); *Flanagan*, 154 F.3d at 200-01 (applying FED. R. CIV. P. 6's timetables, rather than state law, to § 2244(d)(2)).

[9] *E.g.*, *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 467 (5th Cir. 1998) (refusing to apply "mailbox rule" to FED. R. APP. P. 4's time limits, which begin with the filing of a judgment or order); *Lauzon v. Strachan Shipping Co.*, 782 F.2d 1217, 1220 (5th Cir. 1985) (refusing to apply mailbox rule to period under Longshore and Harbor Workers' Compensation Act that ran from filing of order).

[10] Beyond forbidding the motion for reconsideration, Texas state laws and rules simply fail to regulate it. Analogous state law sources as varied as those regulating review by the Court of Criminal Appeals, TEX. CODE OF CRIM. P. art. 11.017; the issuance of the mandate, TEX. R. APP. P. 18.1; the filing of the mandate; TEX. R. APP. P. 18.6; post-conviction applications for habeas corpus, TEX. R. APP. P. 73; and judgments of the Court of Criminal Appeals, TEX. R. APP. P. 78, might be applied. Criminal cases opining on when Texas cases cease to pend on direct appeal might also have persuasive force. *E.g.*, *Ex Parte Thomas*, 953 S.W.2d 286, 289 (Tex. Crim. App. 1997). The parties found the sources so conflicting and marginally relevant that they recommended certification to the Texas Court of Criminal Appeals, a course of action we find unnecessary.

[11] *Lockett v. Anderson*, 230 F.3d 695, 711 n.27 (5th Cir. 2000); *Trevino v. Johnson*, 168 F.3d 173, 181 n.3 (5th Cir. 1999) ("Because they are inadequately argued, we consider these issues waived."); *East v. Scott*, 55 F.3d 886, 1007 n.8 (5th Cir. 1995) ("Because East does not brief these arguments on appeal, we deem them abandoned.").

tified by the dissent, without the benefit of briefing, while relying only on the text of the statutes and rules. Then to apply those statutes and rules to a motion that the Texas rules expressly forbid risks mangling state law beyond recognition.

Circuit precedent requires us to establish a bright-line rule that corresponds to when the Court of Criminal Appeals actually disposed of the motion for reconsideration. Based on the arguments raised in this appeal, we conclude that the court did so in its letter of December 16, 1998.

Because the state court denied the motion for reconsideration on that date, the remaining 215 days expired on July 19, 1999. Lookingbill filed his application on July 23, 1999, making it four days late. Thus, he cannot argue, based solely on *Emerson*, that his federal habeas petition was timely filed.

### B.

Lookingbill argues, though, that his motion for appointment of federal habeas counsel tolled limitations from May 19, 1998, the date of the motion, to February 3, 1999, when he was appointed federal habeas counsel. He cites numerous cases demonstrating the importance of the right to counsel. He has not, however, cited any case in which a motion for appointment of counsel tolled limitations. "[A] habeas petition is pending only after a petition for a writ of habeas corpus itself is filed." *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997) (internal quotation marks omitted). Thus, the filing of the federal habeas petitionSSnot of a motion for appointment of counselSStolls limitations.[12]   Looking

---

[12] *See, e.g.*, 28 U.S.C. § 2254(a); *see also* (continued...)

bill's motion for appointment of federal habeas counsel did not toll limitations, so his federal petition was time-barred under § 2244(d).

### III.

Lookingbill argues that equitable tolling should excuse him from AEDPA's one-year limitations period. We review a denial of equitable tolling only for "abuse of discretion." *Molo v. Johnson*, 207 F.3d 773, 775 (5th Cir. 2000); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001).

AEDPA's limitations period is subject to equitable tolling and is not a jurisdictional bar. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). Therefore, a court may toll the limitations period in "*rare and exceptional circumstances.*" *Id.* (emphasis added). Such circumstances would exist, for example, if "the plaintiff [was] actively misled by the defendant about the cause of action or [was] prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). But, a "garden variety claim of excusable neglect" by the petitioner does not support equitable tolling. *Rashidi,* 96 F.3d at 128 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Lookingbill argues that we should grant equitable tolling for four reasons. First, he

---

[12](...continued)
*Moseley v. French*, 961 F. Supp. 889, 893 (M.D. N.C. 1997) ("Nor is the limitation period tolled because of petitioner's motion for court appointed counsel."), *rev'd on other grounds sub nom. Taylor v. Lee*, 186 F.3d 557 (4th Cir. 1999), *cert. denied*, 528 U.S. 1197 (2000).

claims that he was unduly burdened by not having federal habeas counsel appointed until February 3, 1999. Lookingbill, however, did not address this issue in his brief to the district court. That failure constitutes a waiver on appeal.[13] *Dowthitt v. Johnson*, 230 F.3d 733, 747 n.16 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir. 1999).

Second, Lookingbill claims that the lack of federal habeas counsel prevented him from filing a federal habeas petition. As the district court pointed out, however, Lookingbill was quite aware of the limitations period and could have filed a *pro se* skeletal petition during the pendency of his motion for appointment of federal habeas counsel. He did not. Consequently, he cannot succeed on this claim.[14]

Third, Lookingbill claims that we should apply equitable tolling because his federal habeas counsel was overburdened by a busy docket. He argues that failure to provide equitable tolling would violate the Fifth, Sixth, Eighth, and Fourteenth Amendments. Lookingbill has cited no Fifth Circuit precedent to support this claim. Additionally, as the district court pointed out, "operating under time constraints on federal cases [is] not unusual." Thus, we decline to apply equitable tolling just because a lawyer is busy. Lookingbill's federal habeas counsel had sufficient time to file a federal habeas petition within the limits established by § 2244(d) but did not do so. Consequently, this claim fails.

Most recently, in his letter brief, Lookingbill argues that we should equitably toll the statute because he missed the deadline by only four days. In past cases, we have focused on the reasons for missing the deadline rather than on the magnitude of the tardiness.[15] At the margins, all statutes of limitations and filing deadlines appear arbitrary. AEDPA relies on precise filing deadlines to trigger specific accrual and tolling provisions. Adjusting the deadlines by only a few days in both state and federal courts would make navigating AEDPA's timetable impossible. Such laxity would reduce predictability and would prevent us from treating the similarly situated equally. We consistently have denied tolling even where the petition was only a few days late.[16]

---

[13] Even assuming, *arguendo*, that Lookingbill did not waive this argument, it fails, because the Texas Code of Criminal Procedure does not require the state in any way to assist petitioners in filing their *federal* habeas petitions. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071 § 2(e) (Vernon 2000). Lookingbill cites no provision mandating that the state appoint him counsel for his *federal* habeas action. Consequently, this claim lacks merit. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[14] *See Fisher*, 174 F.3d at 714 (noting that ignorance of AEDPA's limitations period is no excuse for filing an untimely federal habeas petition); *cf. United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (noting that *pro se* status does not excuse an untimely filed federal habeas petition).

[15] *Fisher*, 174 F.3d at 712, 715-16 (refusing to toll statute of limitations for seventeen days despite prisoner's confinement in psychiatric ward without access to glasses or legal materials); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (refusing equitable tolling where petitioner missed deadline by only a "few days"), *cert. denied*, 529 U.S. 1099 (2000).

[16] *Ott*, 192 F.3d at 512 (four days late); *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) (two weeks late); *Fisher*, 174 F.3d at 712 (continued...)

Overall, Lookingbill's arguments for equitable tolling constitute "garden variety claim[s] of excusable neglect." *Rashidi*, 96 F.3d at 128. Because there are no "rare and exceptional circumstances," *Davis*, 158 F.3d at 807, the district court did not abuse its discretion by refusing to apply equitable tolling.

All pending motions are denied.


AFFIRMED.

<span style="color:red">ENDRECORD</span>

---

[16](...continued)
(seventeen days late); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.) (twenty-one days late), *cert. denied*, 531 U.S. 1035 (2000).

DENNIS, Circuit Judge, dissenting:

I respectfully dissent.

Section 2244(d)(2) of Title 28 U.S.C. (1994 ed., Supp. IV) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." A one year period of limitation applies to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). This case presents three questions: (1) whether federal courts are required to apply state law in determining whether an application for state postconviction relief "is pending" within the meaning of this provision; (2) if so, whether under Texas law the petitioner's application for State post-conviction review was "pending" at least until written notice was filed in the state district court on December 21, 1998 announcing the final denial of petitioner's motion for rehearing by that appellate court;[17] and, alternatively, (3) whether the statute of limitations was equitably tolled because petitioner's federal habeas petition in this death penalty case was filed untimely due solely to the incompetence and gross neglect of his federal court appointed counsel. Each question should be answered in the affirmative, making Lookingbill's petition for post-conviction relief timely filed.

The majority erroneously denies Lookingbill relief, however, because it (1) mistakenly assumes that it is not required to apply the meaning of state law; (2) exceeds its jurisdiction by deciding this case according to federal common law rules of its own unauthorized creation; and, in the alternative, (3) fails to recognize that the statute of limitations was equitably tolled.

---

[17] "If we tolled the deadline until December 22, 1998, Lookingbill's COA would be timely." Maj.Op.p.4.

1.

Federal courts are required to apply governing state procedural law in determining whether an application for state post-conviction relief "is properly filed" or "is pending" within the meaning of § 2244(d)(2). In construing that provision, the Supreme Court, in *Artuz v. Bennett*, 531 U.S. 4 (2000), held that an application is "'properly filed' when its delivery and acceptance are in compliance with the applicable [state] laws and rules governing filings."[18] Similarly, this court and other federal circuits have held that a state-court petition "is pending" "from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures."[19]

Despite the controlling precedents of the Supreme Court and this court, the majority claims that "[c]ircuit precedent requires us to establish a bright-line [federal common law] rule that corresponds to when the [Texas] Court of Criminal Appeals actually disposed of the motion for reconsideration" rather than risk "mangling state law beyond recognition." Without further explanation, the majority then concludes that, under its "bright line" rule, the state motion for reconsideration was "actually disposed of" on the date inscribed on the state appellate clerk's letter and that Lookingbill's application therefore stopped pending in state court on that date. Because this court lacks the

---

[18] *Id.* at 8. *Accord Emerson v. Johnson*, 243 F.3d 931, 932-935 (5th Cir. 2001).

[19] *Williams v. Cain*, 217 F.3d 303, 310 (5th Cir. 2000)(quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), affirmed on other grounds, ,531 U.S. 4, 120 S.Ct. 1669, 148 L.Ed. 2d 213 (2000)(internal quotations omitted); *Hizbullahankhamon v. Walker*, 255 F.3d 65, 69 (2d Cir. 2001)(same); *Currie v. Matesanz*, 281 F.3d 261, 266 (1st Cir. 2002)(same); *Fernandez v. Sternes*, 227 F.3d 977, 980 (7th Cir. 2000); *Swartz v. Meyers*, 204 F.3d 417, 420 (3d Cir. 2000)(same); *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir.1999); *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir.1999); *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir.1999). *Accord Bunney v. Mitchell,*262 F.3d 973, 974 (9th Cir. 2001); *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). Thus, the application is 'pending,' not only when it actually is being considered by the trial or appellate court, but also during the 'gap' between the trial court's initial disposition and the petitioner's 'timely filing of a petition for review at the next level.'" *Currie*, 281 F.3d at 266 (citing and quoting from *Melancon*, 259 F.3d at 406). "That rule applies to applications for discretionary review as well as to appeals as of right." *Currie*, 281 F.3d at 266 n.7 (citing *Swartz*, 204 F.3d at 421; *Taylor*, 186 F.3d at 561; *Barnett*, 167 F.3d at 1323).

authority or jurisdiction to supersede the state law meaning of "pending" under § 2244(d)(2) with its own ad hoc federal common law rule, and because I believe that a conscientious reading and application of the state law leads to a different result, I must respectfully disagree.

The majority asserts that Lookingbill did not raise any of the following state law arguments for tolling and, therefore, these arguments are waived. This is incorrect. In response to this court's question whether Texas Courts would decide that a petitioner's application does not cease to pend until the court of Criminal Appeals' order denying the motion for reconsideration is filed in the trial court, Lookingbill's counsel stated, "Texas Courts have held that a criminal case is pending on direct appeal until the appeal has been decided and the state trial court receives and files the mandate of the Court of Criminal Appeals." As to other questions raised by the panel concerning the term "pending," Lookingbill joined with the Attorney General in requesting that questions of Texas procedural law be directed to the Texas Court of Criminal Appeals in the form of certified questions, a request which the majority denied as "unnecessary."[20] The majority has never informed the parties that their request for certified questions has been denied. They have not, therefore, received notice that the court considers these arguments waived and have not expressed any intention to waive them. Furthermore, Lookingbill filed a supplemental letter brief pursuant to Fed. R. App. 28(j) to draw the court's attention to *Currie v. Matesanz*,[21] which "looked at all available avenues which a petitioner might legitimately utilize to determine whether a particular application for post-conviction relief was 'pending'" and which "supports Lookingbill's contention that as long as there were [*sic*] any review open to Mr. Lookingbill[,] that the application was 'pending' for purposes of the AEDPA."

---

[20]I would have certified the questions to the state court.

[21]281 F.3d 261 (1st Cir. 2002).

2.

Applying the meaning of the governing Texas procedural law, Lookingbill's application for state post-conviction review was "pending" at least until written notice was filed in the state district court on December 21, 1998 announcing the final denial of petitioner's motion for rehearing by that appellate court. As the majority has recognized, if the limitations period was tolled this long, "Lookingbill's COA would be timely."[22] There are several reasons for reaching this conclusion under the meaning of the Texas governing law.

a.

The Texas Court of Criminal Appeals is required to expeditiously review all applications for a writ of habeas corpus, and, after reviewing the record, enter its judgment remanding the applicant to custody, or ordering the applicant's release, as the law and facts may justify.[23] The record presented for our review contains only a single judge order which simply denies Lookingbill's application. Because the Texas Criminal Court of Appeals has not rendered a judgment remanding Lookingbill to custody or ordering his release, his application is still pending in the state appellate court insofar as the record discloses.

b.

Texas Rules of Appellate Procedure, Rule 19.1 provides that a "court of appeals' plenary power over its judgment expires . . . 30 days after the court overrules all timely filed motions for rehearing and motions to extend time to file a motion." Rule 19.2 further provides that "[i]n a civil case, the

---

[22]Maj.Op. p.4.

[23]Tex. Code Crim. Proc. Art. 11.071(11).

12

court of appeals retains plenary power to vacate or modify its judgment during the periods prescribed in 19.1 even if a party has filed a petition for review in the Supreme Court." Thus, it is evident that under Texas law the Court of Criminal Appeals retained plenary power and jurisdiction of Lookingbill's application for 30 days after it overruled his timely motion for rehearing. If that motion was overruled on December 16, 1998, as the majority concludes, Lookingbill's application remained pending within the jurisdiction and plenary power of the Court of Criminal Appeals until January 15, 1999. Consequently, the statute was tolled a sufficient amount of time to make Lookingbill's federal application herein timely.

c.

The clerk of the appellate court that renders a judgment must issue a mandate in accordance with the judgment and send it to the clerk of the court to which it is directed when the applicable period expires.[24] In the Supreme Court and the Court of Criminal Appeals, the applicable period is "[t]en days after the time has expired for filing a motion to extend time to file a motion for rehearing if no timely filed motion for rehearing or motion to extend time is pending."[25]

In the present case, the record does not contain a judgment either remanding the petitioner to custody or ordering his release, as required by Texas Code of Criminal Procedure Art. 11.071, or a mandate in accordance with such a judgment that was sent to the clerk of the district court, as required by Texas Rule of Appellate Procedure, Rule 18.1. The letter from the Clerk of the Criminal Court of Appeals to the presiding judge of the state district court bearing the date of December 16,

---

[24]Tex. R. App. Proc. 18.1.

[25]Tex. R. App. Proc. 18.1(b).

13

1998 merely stated: "This is to advise that the Court has denied without written order motion for reconsideration on the court's own motion." Thus, that letter does not purport to be a mandate in accordance with the Court of Criminal Appeal's judgment on the merits as required by Rule 18.1. In the absence of a mandate, jurisdiction over a cause remains in the appellate court, and an attempt to proceed below, prior to the return of a mandate, is a clear invasion of an appellate court's jurisdiction and can be restrained by a writ of prohibition. [26]

Consequently, jurisdiction of Lookingbill's petition remained pending in the Court of Criminal Appeals for at least a sufficient amount of time to make his federal application timely. Even if by a large stretch of imagination the appellate clerk of court's letter to the presiding judge of the district court could be considered to be a mandate of a judgment, it is undisputed that it was not filed in the district court until December 21, 1998 and could not have divested the court of appeals of jurisdiction or reinvested the district court with the same until that date. Even under this conceit, Lookingbill's federal petition was timely.

3.

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable."[27] Assuming, *arguendo*, that Lookingbill's petition was untimely, I disagree with the majority's refusal to grant equitable tolling because a strong argument can be made that the petition was timely filed and because Lookingbill's twice-requested court-appointed

---

[26] *See* 6 Tex. Jur. 3d Appellate Review § 815 (*citing Dixie Gas and Fuel Co. v. Jacobs*, 66 S.W.2d 446 (Tex. Civ. App. Beaumont 1933)). *See* 6 Tex. Jur. 3d Appellate Review § 821 as to the power of the appellate court to enforce a mandate by the use of extraordinary writs.

[27]*Davis v. Johnson,* 158 F.3d 806, 810 (5th Cir. 1998).

lawyer, not Lookingbill, was derelict in failing to file a petition before the limitations period expired. In his brief before this court, Lookingbill argues that the court should equitably toll the time period between his first request for postconviction counsel on May 19, 1998 and the ultimate appointment of federal counsel on February 3, 1999.

Although the general rule is that equitable tolling should only be applied in "rare and exceptional circumstances,"[28] recently the Third Circuit, in *Fahy v. Horn*, held that the confusion surrounding the AEDPA's statute of limitations warranted equitable tolling in a capital case even when the circumstances were not exceptional:

> Because the consequences are so grave and the applicable law is so confounding and unsettled, we must allow less than "extraordinary" circumstances to trigger equitable tolling of the AEDPA's statute of limitations when a petitioner has been diligent in asserting his or her claims and rigid application of the statute would be unfair.[29]

Lookingbill's arguments for equitable tolling are more than "garden variety claim[s] of excusable neglect"[30] and he was clearly diligent in pursuing his claims by seeking federal counsel during the pendency of his state habeas petition. Although there is no constitutional right to appointment of counsel in collateral review, the State of Texas and the United States government have conferred a statutory right to the appointment of counsel in death penalty habeas proceedings.[31] After the application for a writ of habeas corpus had been denied by the Court of Criminal Appeals on March 5, 1998, Lookingbill's state-appointed counsel filed a motion for appointment of federal habeas counsel, but no action was taken by the federal court. Lookingbill filed a second motion for

---

[28]*Id.* at 807.

[29]240 F.3d 239, 245 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001).

[30]Maj. Op. p. 8 (*citing Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

[31]Tex. C. Crim. Proc. art. 11.071; 21 U.S.C. § 848(q).

appointment of federal counsel on September 23, 1998, even though his motion for reconsideration was still pending before the Court of Criminal Appeals. In December, Lookingbill's counsel was discharged and he remained without representation until February 3, 1999, when the federal district court finally granted his motion and appointed federal habeas counsel. In my opinion, it would be fundamentally unfair to penalize Lookingbill for the time elapsed during the pendency of his motion for appointment of counsel in light of the grave consequences and unsettled state of the law.

Finally, the majority's conclusion that Lookingbill could have filed a skeletal federal habeas corpus petition *pro se* imposes an unfair and unrealistic burden upon an unsophisticated prisoner represented by a dilatory court-appointed attorney. Habeas corpus petitions must meet heightened pleading requirements and comply with the Supreme Court's doctrines of procedural default and waiver.[32] Federal courts can summarily dismiss any habeas petition that appears legally insufficient on its face.[33] "Moreover, should a defendant's *pro se* petition be summarily dismissed, any petition subsequently filed by counsel could be subject to dismissal as an abuse of the writ."[34]

For the foregoing reasons, we should grant equitable tolling.[35] As we have wisely concluded before, "[w]e must be cautious not to apply the statute of limitations too harshly,"[36] especially where the consequences of error are so grave.

---

[32]*McFarland v. Scott*, 512 U.S. 849, 856 (1994).

[33]*Id.*

[34]*Id.*

[35]*Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir. 1998).

[36]*Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).